# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| RITA DALE BAUGHMAN, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. 12-12-CV-DPR |
| MICHAEL J. ASTRUE, Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) ) |

## MEMORANDUM AND ORDER

An Administrative Law Judge ("ALJ") denied Social Security Disability Insurance Benefits, Supplemental Security Income, and Disabled Widow's Benefits to Plaintiff Rita Baughman in a decision dated August 17, 2011 (Tr. 9-21). The Appeals Counsel denied review (Tr. 1-3). Thus, the ALJ's decision became the Commissioner of Social Security's final decision denying Social Security Disability benefits. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 416.1481. For the reasons set forth below, the decision of the Commissioner of Social Security is **AFFIRMED**.

### FACTUAL BACKGROUND

Claimant Baughman sought disability benefits alleging left knee, left hip, and lower back pain, obesity, and depression (Tr. 176). Baughman alleged the onset of her disability from October 7, 2009 (Tr. 172). She claimed past work as a purchasing clerk and receptionist (Tr. 178).

*Medical Records and Opinions*

A December 4, 2009, x-ray of the left hip report showed no fracture, well-maintained joint space, and no bony destructive lesions (Tr. 281). An October 7, 2008, x-ray of the left knee showed no fracture, no bony destruction or dislocation, and no acute osseous abnormality (Tr.

267).

Plaintiff complained of back pain with radiation to the left leg during an examination on October 7, 2009. She rated her pain as a 9 on a scale from zero to ten. Beverly Wombold, F.N.P., noted a slow and careful, limping gait, and pain to palpation at L5-S1 (Tr. 227-28).

Dr. Dorinda Faulkner examined Baughman for a Medicaid determination on January 4, 2010. Baughman complained of constant low back pain that began when she was in her mid-twenties. The pain became severe and constant beginning in October 2009. She reported she did not take pain medication because it decreases her balance and coordination, creating a fall risk. She complained that in October 2009 she heard and felt a "pop" in her left hip. She has experienced constant left hip pain, which radiates to her left leg, since. Pain is improved with a heating pad. Baughman reported left knee pain that causes difficulty balancing and climbing stairs. She stated that her left knee "gives out" regularly, and she falls often. She reported difficulty walking, and frequently rolls around her house in an office chair. Baughman reported to Dr. Faulkner that she could walk only 50 feet and stand for only ten to fifteen minutes before she experiences left hip and knee pain, can only sit for 30 minutes without hip pain. Dr. Faulkner reported Baughman is "morbidly obese," and experiences discomfort with walking only short distances. Dr. Faulkner stated, "she moves very painfully, favoring her left leg. . . . She sighs frequently."

Upon examination, Dr. Faulkner notes Baughman flinched with palpation of the spine and complained of pain along her entire lumbar spine. She "moves stiffly and is very vocal indicating obvious discomfort." Dr. Faulkner noted reduced bilateral hip range of motion. Dr. Faulkner also reported, "[s]he is in obvious discomfort with movement." Although Baughman complained of knee pain, Dr. Faulkner noted no heat, effusion, edema, and no crepitus with passive range of motion, no obvious ligamentous laxity, and reported normal, full extension. Regarding balance,

Dr. Faulkner noted a "painful gait," and that Baughman "moves very slowly and constantly sighs and indicates discomfort." Baughman was able to touch her toes after bending from the waist, but complained of low back pain on returning upright." A deep knee bend was performed with difficulty, complaining of "inferior left patellar pain." Dr. Faulkner diagnosed "probable mild diffuse degenerative disease, with inferior facet joint arthrosis, and slight scoliosis" in her lumbar spine, mild medial compartment degenerative changes in her left knee, and normal left hip. Dr. Faulkner recorded her impression, as relevant, as low back pain with radiculopathy, left knee pain, depression, and morbid obesity. Dr. Faulkner concluded, "based on the history provided, examination performed and information obtained, Ms. Baughman is temporarily functionally disabled from working" (Tr. 519-22).

Dr. David Engelking, M.D., examined Baughman for the agency on March 25, 2010. Upon examination, Dr. Engelking noted that Baughman was obese, but demonstrated no evidence of problems walking. He reported "no swelling, tenderness, deformities, or spasm about the shoulders, elbows, wrists, knees, hips, ankles, neck, or back." He noted she had trouble climbing upon the examining table, and some trouble with tandem and heel and toe walking. He noted difficulty squatting, and arising from squatting, and a slow gait. He diagnosed pain left knee and hip by history, depression by history, and obesity (319-21).

Dr. Faulkner evaluated Baughman again on December 2, 2010, for a second Medicaid evaluation. Baughman complained of low back pain, left hip pain, bilateral knee pain, burning left shoulder pain with chronic tingling in her fingers, and grinding neck pain with cervical motion. Dr. Faulkner stated,

> Ms. Baughman is a morbidly obese, cooperative woman who is alert and oriented. She appears uncomfortable and constantly sighs and exhales loudly. She moves very slowly and sighs with any movement or request. She looks miserable and chronically grimaces. She appears to be in significant pain upon moving onto the table; she complains of low back pain. She moans continually. She trembles at

3

times, as if a chill moves through her body. She is very dramatic with her responses. She constantly seems near tears. She admits to being depressed. She denied thoughts of harm to herself or others. She appears her stated age of 53 years.

(Tr. 531). Upon examination, Dr. Faulkner noted, "[p]atient locates pain inconsistent to stated sites of pain." She complained of pain along most of her spine, and moved away from touch, especially with palpation of lumbar spine and posterior pelvis. She noted a restricted range of motion of the back, and slow and painful movement. Regarding her left knee, Dr. Faulkner noted that Baughman initially denied pain to palpation, but later complained of bilateral peri-patellar pain. Dr. Faulkner reported moderate crepitus with passive bilateral range of motion. Dr. Faulkner reported Baughman was unable to walk on her toes due to plantar pain, and would not attempt heel walking due to reported heel spurs. She was able to perform a deep knee bend to 25% with difficulty, stating, "it feels like a knife is cutting across my knees." X-rays of the cervical spine revealed moderate diffuse cervical degenerative disc disease and mild diffuse facet joint arthrosis; and of the thoracic spine revealed mid-thoracic spondylosis, exaggerated thoracic kyphosis, and mild thoracic scoliosis. Dr. Faulkner recorded her impression, as relevant, as low back pain with suspect left radiculopathy; suspect severe depression; morbid obesity; left hip pain; bilateral knee pain; cervical pain with suspect left radiculopathy; and left shoulder pain. Dr. Faulkner opined that Baughman was "currently functionally disabled from working" (Tr. 529-33).

Michael S. Clarke, M.D. examined Baughman for Medicaid the next day, December 3, 2010. Baughman complained of low back, left hip, and bilateral knee pain. Dr. Clarke noted marked truncal obesity. He reported a satisfactory gait without limp, and normal posture. She displayed no significant symptoms to the upper extremities. A back examination showed only a mildly decreased range of motion. X-rays of the low back showed normal disc spaces but some degenerative facet changes and a very slight scoliosis. Hips were "well-maintained." X-rays of

4

the knees showed minor degenerative changes. Baughman showed mild crepitance with movement, but overall, "the knees were quite stable." He concluded, "Mrs. Baughman has mild to moderate degenerative spondylosis of her lumbar spine to a great extent due to her marked obesity." But opined, "I doubt that she would have sufficient pathology to qualify for Medicaid" (Tr. 547-48).

*ALJ Hearing*

Baughman appeared with counsel at a hearing before an ALJ held August 1, 2011. Baughman testified that she could sit for a couple of hours at a time. She experiences less pain if she sits with her feet up. She testified she is able to walk for about fifteen minutes before she feels pressure in her back and knees and feels like she is going to "give out." She testified she cannot walk up and down stairs, and is able to bend over and lift only light things, such as an 18-pound bag of cat food, which she does only once a month. She testified she would be unable to satisfy the lifting requirements of her previous job as a stock clerk, because in that job she had to lift between 20 to 100 pounds regularly. She testified that her pain prevents her from doing household chores. She sweeps the floors while sitting in a rolling office chair, can only push the vacuum three times before she has to rest. She has to take breaks while washing dishes. She has sometimes washed dishes while sitting. She does her own cooking but must sit down to chop. She can bathe and dress herself, but usually wears t-shirts and sweatpants, which are easy to don and doff. She cannot hang laundry on the line to dry, and she cannot do any yard work. She can walk twelve feet to get her mail. At Wal-Mart, she uses an electric cart for shopping, and gets assistance loading the bags into her car. She estimated she shops four times per month. She is able to drive regularly. She testified she was once able to cross-stitch, embroider, and sew, but she has difficulty doing those tasks now because her hands shake. She also has difficulty typing. She testified that she stopped her job doing filing and clerical work because she was laid off. She

testified that had she not been laid off, she probably would have continued working. She testified she takes Prozac for depression and hydrocodone at night for pain. The Prozac causes "buzzing" in her head, and she doesn't like to take the hydrocodone because it gives her a "false sense of hope."

A vocational expert also testified at the hearing. Based on two hypotheticals posed by the ALJ, the vocational expert testified that a claimant with Baughman's abilities at the light exertion level would be able to perform her past relevant work as a clerk/receptionist and a cashier/checker. She could also do jobs as an office helper, storage rental facility clerk, or assembler in small parts production. If her ability were reduced to the sedentary level, she could continue to perform the job of purchasing clerk or receptionist (Tr. 26-65).

*ALJ Opinion*

The ALJ found that Baughman had the following severe impairments: obesity, degenerative joint disease of the knees, and degenerative disc disease of the cervical, thoracic, and lumbar spine (Tr. 12).[1] The ALJ found that Baughman did not suffer from an impairment or combination of impairments that met or medically equal a listed impairment. The ALJ further determined that Baughman had the residual functional capacity (RFC) to perform light work as defined in the regulations. Specifically, she is able to lift or carry twenty pounds occasionally and ten pounds frequently; stand or walk six hours out of an eight-hour workday; and sit six hours out of an eight-hour workday. She can occasionally stoop, kneel, crouch, climb ramps or stairs, but must avoid crawling and climbing ladders, ropes, or scaffolds, and must avoid exposure to dangerous machinery and unprotected heights. In determining this RFC, the ALJ found that

---

[1] The ALJ found Baughman's alleged mental impairments non-severe because they "do not cause more than minimal limitation in the claimant's ability to perform basic mental work activities" (Tr. 12).

Baughman's subjective complaints were not credible, as they were inconsistent with the medical evidence in the record. The ALJ found Baughman's credibility also damaged by her stated daily activities, which were inconsistent with her alleged complaints of pain and incapacity; the conservative medical treatment she has received despite her claims of total incapacitation; and the fact that she was laid off from her job not due to her impairments. The ALJ gave little weight to the opinion of Dr. Engelking, the examining agency physician, because his findings do not support a limitation in Baughman's ability to walk, or her range of motion which was normal, but reduced by her obesity, and because his findings were largely subjective.

The ALJ also gave little weight to the opinion of Dr. Faulkner, because her report "call[ed] into question the effort put forth by the claimant," and noted Baughman's dramatic groans, sighs, and grimaces. In addition, Dr. Faulkner noted that Baughman identified pain in locations "inconsistent with stated sites of pain." Dr. Faulkner ultimately concluded that claimant was disabled, but the ALJ gave little weight to that opinion because whether or not a claimant is disabled is a decision reserved to the Commissioner. The ALJ gave more weight to the opinion of Dr. Clarke, who saw Baughman the day after she saw Dr. Faulkner for the second time, because Dr. Clarke's opinion was "more consistent with the minimal objective and examination findings." Based on the RFC determination, the ALJ found Baughman capable of performing her past relevant work as a purchasing clerk/receptionist (Tr. 9-21).

## LEGAL STANDARDS

To receive disability benefits, a claimant must be "disabled." A disabled person is one whose physical or mental impairments result from anatomical, physiological, or psychological abnormalities which can be demonstrated by medically acceptable clinical and laboratory diagnostic techniques and which prevent the person from performing previous work and any other

kind of substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(1)(A), 423(d)(2)(A), 1382c(a)(3)(B), 1382c(a)(3)(D).

The Social Security regulations provide for a five-step sequential inquiry for determining whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. The Commissioner must consider in sequence: (1) whether the claimant is currently employed and doing substantial gainful activity, (2) whether the claimant has a severe medically determinable physical or mental impairment or combination of impairments, (3) whether the impairment meets or equals one listed by the Commissioner and whether it meets the duration requirement, (4) whether the claimant has the residual functional capacity to return to doing his or her past work, and (5) whether the claimant is capable of making an adjustment to some other type of work available in the national economy. *See Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003); *Goff v. Barnhart,* 421 F.3d 785, 790 (8th Cir. 2005). If the claimant does not have a listed impairment, but cannot perform his or her past work, then the burden shifts to the Commissioner at step five to show that the claimant can perform some other job that exists in the national economy. *Id*.

Judicial review of a denial of disability benefits is limited to whether there is substantial evidence on the record as a whole to support the Social Security Administration's decision. 42 U.S.C. § 405(g); *Minor v. Astrue*, 574 F.3d 625, 627 (8th Cir. 2009). Substantial evidence is "'such evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. V. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence on the record as a whole," however, requires a more exacting analysis, which also takes into account "whatever in the record fairly detracts from its weight." *Minor*, 574 F.3d at 627 (quoting *Wilson v. Sullivan*, 886 F.2d 172, 175 (8th Cir. 1989)). Thus, where it is possible to draw two inconsistent conclusions from the evidence,

and one conclusion represents the ALJ's findings, a court must affirm the decision. *See Robinson v. Sullivan*, 956 F.2d 836, 838 (8th Cir. 1992) (citing *Cruse v. Bowen*, 867 F.2d 1183, 1184 (8th Cir. 1989)). In other words, a court should not disturb an ALJ's denial of benefits if the decision "falls within the available zone of choice." *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). A decision may fall within the "zone of choice" even where the court "might have reached a different conclusion had [the court] been the initial finder of fact." *Id.* (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)).

*Credibility Determination*

Baughman argues first that the ALJ erred in finding her subjective complaints not credible. In assessing a claimant's credibility, an ALJ must consider 1) the claimant's daily activities; 2) the duration, intensity, and frequency of pain; 3) the precipitating and aggravating factors; 4) the dosage, effectiveness, and side effects of medication; 5) any functional restrictions; 6) the claimant's work history; and 7) the absence of objective medical evidence to support the claimant's complaints. *Buckner*, 646 F.3d at 558 (quoting *Moore v. Astrue*, 572 F.3d 520, 524 (8th Cir. 2009)); *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). An ALJ is not required to explicitly discuss each *Polaski* factor, so long as the ALJ acknowledges and considers them before discounting a claimant's subjective complaints. *See Wildman v. Astrue*, 596 F.3d 959, 968 (8th Cir. 2010). An ALJ may find a claimant's allegations not credible where there exist "inconsistencies in the record as a whole." *Id.* A court will defer to an ALJ's credibility determination "if the ALJ 'explicitly discredits a claimant's testimony and gives a good reason for doing so.'" *Id.* (quoting *Schultz v. Astrue*, 479 F.3d 979, 983 (8th Cir. 2007)).

Substantial evidence on the record as a whole supports the ALJ's determination that

9

Baughman's subjective complaints are not credible. The ALJ considered the factors set out in *Polaski,* including Baughman's activities, pain, medications, functional limitations, work history, and available medical evidence. The ALJ specifically identified the following as damaging to Baughman's credibility: her failure to give full effort in her medical and functional examinations; her "dramatic" or exaggerated complaints of pain; the inconsistencies between Baughman's testimony regarding her pain and her reports of her activities of daily living; the conservative medical treatment she received; the inconsistency between her subjective complaints and the objective medical evidence; and the fact that her unemployment was unrelated to her alleged impairments. In the Court's view, these inconsistencies constitute "good reasons" for discounting Baughman's testimony regarding the severity of her subjective complaints. The ALJ's conclusion is supported by substantial evidence on the record as a whole and remains within the ALJ's "zone of choice." Thus, the Court finds no basis in the record to overturn the ALJ's credibility determination.

*RFC Determination*

Second, Baughman argues that the ALJ's RFC calculation is flawed because the ALJ did not adopt the disability recommendation of Dr. Faulkner, who examined Baughman twice. An ALJ's RFC determination must be supported by some medical evidence. *See Cox v. Astrue*, 495 F.3d 614, 619 (8th Cir. 2007) (citing *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)). But the RFC determination "is not limited to considering medical evidence exclusively." *Cox*, 495 F.3d at 619. "Although medical source opinions are considered in assessing RFC, the final determination of RFC is left to the Commissioner." *Ellis*, 392 F.3d at 994 (citing 20 C.F.R. § 404.1527(e)(2)). Any medical opinion regarding disability may also be discounted by the ALJ because the determination whether an individual is disabled is left to the Commissioner. 20 C.F.R.

10

Case 4:12-cv-00012-DPR   Document 15   Filed 03/29/13   Page 10 of 12

§ 404.1527(d)(1). In determining whether a claimant is disabled, an ALJ is directed to evaluate the opinion of a consulting physician based upon the evidence in the record and upon the source's area of specialty or expertise in the listings. 20 C.F.R. § 404.1527(e)(2)(ii). Regardless of the source of the opinion, the ALJ must explain and give good reasons for the weight accorded to the various opinions. *Id*.

The Court finds that the ALJ's RFC determination is based upon substantial evidence in the record. First, the opinion is consistent with medical evidence. Dr. Engelking found Baughman had no difficulty walking, but noted difficulty with climbing and squatting. The ALJ included a restriction that Baughman could only occasionally stoop, kneel, crouch, and climb ramps or stairs. Dr. Clarke reported a satisfactory gait without limp, and normal posture, with no significant symptoms to the upper extremities, and only mildly decreased range of motion in the back. X-rays from December 2010 showed only mild to moderate degenerative disc disease and mild scoliosis in the back. X-rays of the knees at the same time showed only minor degenerative changes. X-rays of the hips were essentially normal. Moreover, the ALJ gave good reasons for assigning weight to the various medical opinions, which is all the ALJ is required to do. In addition, it was not improper for the ALJ to discount Dr. Faulkner's opinions that Baughman was disabled because that determination is reserved to the Commissioner. Accordingly, the Court finds no basis upon which to reverse the ALJ's RFC determination.

## CONCLUSION

Based upon a thorough review of the record, the Court finds the ALJ's decision is supported by substantial evidence on the record as a whole. Accordingly, **IT IS THEREFORE ORDERED** that the decision of the Commissioner of Social Security is **AFFIRMED**.

**IT IS SO ORDERED.**

**DATED: March 29, 2013**

　　　　　　　　　　　　　　　　　　　　/s/ *David P. Rush*
　　　　　　　　　　　　　　　　　　　**DAVID P. RUSH**
　　　　　　　　　　　　　　　　　　　**United States Magistrate Judge**